**ORMET CORPORATION, Appellant,**

v.

**OHIO CIVIL RIGHTS COMMISSION et al., Appellees.**

[Cite as *Ormet Corp. v. Ohio Civil Rights Comm.* (1990), 68 Ohio App.3d 543.]

Court of Appeals of Ohio,
Monroe County.

No. 664.

Decided Sept. 12, 1990.

*Richard A. Yoss; Laura A. Candris* and *Patrick F. Kilker*, for appellant.

*Anthony J. Celebrezze, Jr.*, Attorney General, and *Joseph D. Rubino*, for appellees.

Cox, Judge.

This appeal arises from the judgment order issued by the Monroe County Common Pleas Court affirming an order issued by the Ohio Civil Rights Commission, which found that plaintiff-appellant, Ormet Corporation, had unlawfully terminated John C. McGhee's employment on the basis of his race. The Ohio Civil Rights Commission (the "commission") and John C. McGhee shall hereinafter be referred to as the appellees.

In October 1985, appellee McGhee sustained an eye injury when a spark flew into his eye and burned it. After being off work for two days, he returned to work on October 17, 1985, with medical restrictions against craning or firing. McGhee reported to the nurse, who gave him a medical slip stating the restrictions. Appellant's foreman, Gary Pegg, a person who had called McGhee a "nigger," told McGhee to shovel coal dust and other material in three furnace rooms. While performing this task, McGhee requested Pegg to get a safety man because his eye hurt and he questioned whether he should be shoveling fine coke dust. Thereafter, McGhee met with Pegg and the safety man and it was suggested that McGhee wear a patch and use drops for his eye. The company nurse gave McGhee a patch for his eye and he thereafter completed his assigned task in the second furnace room and began to work in the third furnace room.

McGhee's eye continued to hurt and he went to the dispensary requesting permission to go home or to an emergency room at a hospital. The company nurse refused to consent to this request. Subsequently, McGhee advised Pegg that his eye hurt and that he wanted to go home. Pegg refused this request and McGhee again requested a safety man. Pegg told McGhee to go back to work and he did so. McGhee was on his way back to the dispensary when he encountered Pegg, who advised him of another work assignment. McGhee again asked for the safety man and was told he did not have a safety problem. An argument ensued resulting in Pegg giving McGhee a direct order to go to the office, which he did. A meeting with another foreman, the safety man, Pegg and McGhee resulted in another visit to the dispensary by McGhee. Again, the company nurse refused to permit McGhee to go home. Upon returning to the office, Pegg told McGhee he was being charged with willful insubordination. Subsequently, McGhee was terminated from his employment.

On December 2, 1985, McGhee filed a sworn charge affidavit with the commission alleging he had been unlawfully discriminated against because of his race. The commission found that appellant employed few blacks and that McGhee was among the first blacks hired by appellant. There was also a finding that McGhee had been the target of a burning cross in his work area and had difficulty with a bid for a craneman's position.

Additionally, McGhee complained that a supervisor had refused to permit him to come out of his crane for a water break during the month of August when temperatures in the furnace crane room exceeded 100 degrees. Suspension proceedings were initiated against McGhee for disobeying this order. McGhee also filed complaints that he had been called a "nigger" by a foreman, Gene Cline, and co-workers. He also complained that Pegg forced him to perform work that was usually optional duty for a craneman.

The commission concluded appellant had unlawfully terminated McGhee's employment on the basis of his race. The common pleas court considered the record, consisting of exhibits, pleadings, transcript, post-hearing briefs and arguments, and affirmed the commission's order as being proper. The trial court's opinion and decision referred to R.C. 4112.06(E), governing judicial review of a final order issued by the commission, which states in pertinent part:

"The findings of the commission as to the facts shall be conclusive if supported by reliable, probative, and substantial evidence on the record and such additional evidence as the court has admitted considered as a whole."

The trial court further stated in its opinion:

"* * * [W]hile this court may not agree with the Commission's interpretation of the facts, it nevertheless is not at liberty to substitute its judgment for that of the administrative agency where the agency's action is supported by reliable, probative, and substantial evidence."

The trial court further concluded that such reliable, probative, and substantial evidence is present to support the agency's finding that McGhee was discriminated against because of his race and that race was a factor in appellant's decision to terminate his employment.

The commission's order was affirmed and the appellant was ordered to do the following things:

(1) Cease and desist from all discriminatory practices;

(2) Make McGhee an offer of employment within ten days and pay him at the same wage he would have been paid on October 18, 1985;

(3) Submit a certified check to the commission payable to McGhee for his lost earnings between October 18, 1985 and the date of the order, to wit, February 11, 1988, including all raises;

(4) Refrain from taking any action to discipline, demote or discharge McGhee, without notifying the commission within ten days of such action, of the circumstances thereof and the reasons therefor; and

(5) Expunge from McGhee's records any information pertaining to the Ohio Civil Rights Commission and refrain from referring to this proceeding in any future employment decision.

On March 23, 1989, the common pleas court filed its judgment entry affirming the commission's order. This timely appeal followed.

Appellant's sole assignment of error alleges the common pleas court abused its discretion in affirming the commission's order.

In defining the term "abuse of discretion," the court, in *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218–219, 5 OBR 481, 481–483, 450 N.E.2d 1140, 1141–1142, refers to more than a minor error in law or judgment and implies that the court was unreasonable, arbitrary or unconscionable in its decision. A reversal by an appellate court is only justified where it is determined that the common pleas court acted unreasonably, arbitrarily or unconscionably. See *Columbus v. Ohio Civil Rights Comm.* (1985), 23 Ohio App.3d 178, 180–181, 23 OBR 421, 423–425, 492 N.E.2d 482, 484–486. It has consistently been held that it is error for a common pleas court to substitute its judgment for that of an administrative agency where the agency's action is supported by reliable, probative and substantial evidence. *Glouster v. Pub. Util. Comm.* (1951), 155 Ohio St. 162, 44 O.O. 146, 97 N.E.2d 658.

 Appellee commission correctly states that to sustain its burden, the Ohio Civil Rights Commission need not prove that the complainant's race was the only reason for appellant's action; rather, if the commission proves that race is a factor in appellant's employment decision, this constitutes a prima facie case of unlawful discrimination under both federal and Ohio law. *Bd. of Edn. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 252, 20 O.O.3d 240, 421 N.E.2d 511.

 The common pleas court found that the commission's decision was supported by reliable, probative and substantial evidence. Thus, the common pleas court had no alternative other than to affirm the commission's finding. The appellant's assignment of error is found to be without merit and the judgment of the common pleas court is affirmed.

*Judgment affirmed.*

O'NEILL, P.J., and DONOFRIO, J., concur.